UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

| | | |
|---|---|---|
| ROGER MOORE, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| -vs.- | ) | No. CV-98-P-582-W |
| | ) | |
| NATIONAL FOUNDATION LIFE | ) | |
| INSURANCE COMPANY, | ) | |
|     Defendant. | ) | |

OPINION

The defendant's February 5, 1999 Motion for Summary Judgment was taken under submission by the court on March 5, 1999. On March 1, 1999, the defendant filed a Motion to Strike the testimony of the plaintiff's expert witness, Dr. Robert Hershbarger. For the reasons expressed herein, both the motion to strike and the motion for summary judgment are due to be granted.

Facts[1]

In 1994, the plaintiff purchased a health insurance policy from the defendant. On June 21, 1997, the plaintiff was involved in an automobile accident and hospitalized with numerous injuries, including a broken leg. As a result of these injuries, the plaintiff incurred medical expenses totaling over $66,000. See Def.'s Exh. 7. The defendant received its first notice of a claim regarding these expenses from Myers Drug Company on July 31, 1997.

On August 13, 1997, the defendant mailed the plaintiff a letter requesting him to complete

---

[1] The recitation of facts is presented in the light most favorable to the plaintiff.

1

a claimant's statement and enclosed a copy of the form for the plaintiff to fill out. The defendant received a copy of a claim form from the plaintiff on August 21, 1997.[2] According to the defendant, this claim form was incomplete (only one side was filled out) and therefore the plaintiff's claim could not be processed until additional information was received. The defendant claims that it sent another copy of the request to the plaintiff in early September, 1997.

On October 6, 1997, the defendant sent the plaintiff a letter indicating that additional information– the details of the accident and whether the plaintiff had received any workman's compensation benefits– was still needed by the defendant in order to process the claim. The letter contained the following language: "[t]his documentation has not been received by our office, and any assistance you may offer in obtaining it will be appreciated... At this time we must place the claim in our closed, incomplete file. Upon receipt of the requested information, we will be pleased to reopen the file and process your claim." The letter also provided a toll-free telephone number for the defendant's Customer Service Department. In his brief and at his deposition, the plaintiff asserted that at the time he received this letter, he believed that it indicated that the defendant had denied coverage of his medical expenses.

The plaintiff also testified at his deposition that during October and November 1997, he spoke to representatives of the defendant three times and twice faxed them an accident report and a synopsis of the accident. *See* Pl.'s Dep. At 32-37; 42-45. Neither the plaintiff nor the defendant has produced copies of these faxes to the court. He also hired an attorney, who faxed information to the defendant on November 20, 1997, and sent a letter with copies of the plaintiff's

---

[2]This statement was signed by the plaintiff on July 10th, and by his physician on July 25, 1997.

2

bills attached that was received by the defendant on December 1st.

According to the plaintiff, he received correspondence from the defendant on December 5, 1997, that indicated to the plaintiff that his claims had been denied. At that time, the defendant sent an "Explanation of Benefits" to the plaintiff. This document is a chart that listed all of the plaintiff's submitted charges in the first column. A second column indicated that the defendant had "not covered" the entire amount of each submitted charge. Therefore, the column listing the "benefit paid" was $00.00 for each submitted charge. An additional column listed the "explanation code" for each submitted charge as "BI." On each page of the document the "BI" code was explained as "will consider upon receipt of prev. req. info."

On December 24, 1997, the defendant received a second claimant's statement from the plaintiff dated December 16, 1997. This statement had the reverse side filled out and signed. According to the plaintiff, on January 9, 1998, he faxed the accident report to the defendant for a third time.

On February 19, 1998, the plaintiff filed suit against the defendant in the Circuit Court of Bibb County alleging breach of contract, negligence, fraud and bad faith. The defendant removed the case to this court on March 12, 1998. The defendant paid all of the plaintiff's claims on March 26th, 27th, and April 6, 1998, about eight months after the defendant first received notice of a claim related to the plaintiff's accident.

Analysis

Motion to Strike

In his response to the motion for summary judgment, the plaintiff filed testimony by Dr. Robert Herschbarger, a professor of insurance at Mississippi State University, as to industry

3

standards of claims adjusting. Professor's Herschbarger's testimony in this case would not assist a factfinder "to understand the evidence or determine a fact in issue" as contemplated by Fed. R. Evid. 702. Therefore, the motion to strike is due to be granted.[3]

Motion for Summary Judgment

The plaintiff alleges that he understood the defendant's letters of October 6, 1997, and December 5, 1997, to be denials of his insurance claims. He claims that by denying the claims, the defendant breached its insurance contract with the plaintiff. Although payment of the plaintiff's claims were delayed for an extensive period of time, the claims were never denied. If the defendant had denied the plaintiff's claims, the plaintiff could bring a claim for breach of contract. *See United Insurance Company of America v. Cope*, 630 So.2d 407, 412 (Ala. 1993). However, the evidence shows that the defendant's communications informed the plaintiff that more information was needed before the claim could be processed. Neither of the letters indicated that the claim was permanently denied.

The October letter, as quoted above, clearly stated that the claim was being put into a closed file, but was subject to reopening when the previously requested information was received by the defendant. The December "Explanation of Benefits" letter showed that the benefits had not been paid, but the explanation code for each charge stated that the defendant would consider the charges "upon receipt of previously requested information." Neither of these communications stated that the defendant had denied coverage of the plaintiff's medical expenses, but indicated that

---

[3]However, even if the court had considered Dr. Herschbarger's testimony, the court would not have been persuaded that the motion for summary judgment was due to be denied.

4

the defendant expected the plaintiff to furnish additional information.

It is undisputed that the plaintiff's claims were paid by the defendant in March and April 1998. Despite the delay in paying the claim and the fact that the claims were paid after the plaintiff had filed suit, the defendant has not breached its contract with the plaintiff. Therefore, summary judgement is due to be granted on the plaintiff's breach of contract claim.

The plaintiff's complaint alleges that the defendant acted in bad faith by failing to perform its obligations under the insurance agreement. Under Alabama law, a claim of bad faith based on refusal to pay an insurance claim must generally show the existence of an insurance contract and that the defendant breached that contract. *See King v. Nat'l Foundation Life Ins.*, 541 So.2d 502, 504-05 (Ala. 1989). As noted above, the defendant did not breach its contract with the plaintiff. The plaintiff therefore has no basis for his claim that the defendant acted in bad faith.

Moreover, in order to show bad faith in failing to pay an insurance claim, the plaintiff must show "a bad faith nonpayment... without reasonable ground for dispute.... "Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim." *Blue Cross and Blue Shield of Alabama v. Granger*, 461 So.2d 1320, 1325 (Ala. 1984) (quoting *National Security Fire & Casualty Co. v. Bowen*, 417 So.2d 179, 183 (Ala. 1982)). This is a "heavy burden of proof" that the plaintiff must bear. *Granger*, 461 So.2d at 1325. In *Granger*, over a year passed before a claim was paid due to computer error and mishandling of the insurance claim by Blue Cross and by the hospital submitting the claim. However, absent evidence of intent to injure Granger, the court found that "mere negligence or bad judgment will not support a bad faith claim." *Id.* at 1327.

Here, the defendant argues that it delayed payment on the plaintiff's claim due to his

5

failure to submit the proper claim forms. The evidence shows that on August 13th, October 6th, and December 5, 1997, the defendant notified the plaintiff that additional information was necessary to process his claims. Nothing in the parties' submissions to the court indicates an intent on the part of the defendant to injure the plaintiff by failing to pay his claims.

The plaintiff argues in his brief that the defendant acted in bad faith by failing "to aggressively and forcefully investigate [his] claims to make sure they were timely paid." Pl.'s Brief at 11. Alabama law is clear that no such duty exists on the part of an insurance company. *See Cope*, 630 So.2d at 412. Therefore, summary judgment is due to be granted on the plaintiff's claim of bad faith.

Summary judgment is also due to be granted on the plaintiff's negligence, wantonness and fraud claims. First, the Alabama Supreme Court has declined to recognize a cause of action for either negligent or wanton handling of insurance claims. *See Kervin v. Southern Guaranty Ins. Co.*, 667 So.2d 704, 706 (Ala. 1995). These claims are therefore due to be dismissed.

Second, the plaintiff has failed to produce credible evidence of fraud such that a reasonable jury could conclude that the defendant committed fraud. In order to defeat the defendant's motion for summary judgment on his fraud claim, the plaintiff must produce substantial evidence of the elements of fraud: (1) a false representation concerning a material fact; (2) the plaintiff's reliance on the representation; and (3) injury or damage to the plaintiff as a proximate result of the representation. *See Crowne Investments, Inc. v. Bryant*, 638 So.2d 873, 875-76 (Ala. 1994). The plaintiff has failed to produce any credible evidence of these elements. Therefore, summary judgment is due to be granted on all of the plaintiff's claims, terminating this case.

Dated: ___Nov. 17___, 1999

                                        Chief Judge Sam C. Pointer, Jr.

Service List:
    William H. Brooks
    Samuel H. Franklin
    William D. Davis, III